Turner vs. Burnell, Garnishee.

=====

TURNER vs. BURNELL, Garnishee.

*December 18, 1879 — January 7, 1880.*

*Compromise of doubtful claim.*

T., a creditor of M. & K., having a doubtful claim to subject to the payment of the indebtedness due him certain insurance moneys also claimed by K., knowing that K. had assigned his right to such insurance moneys to B., agreed with B., in consideration of $200 paid him by the latter for sums which T. claimed to have advanced for premiums on the policies,

Turner vs. Burnell, Garnishee.

to relinquish all claims against the insurance company for such moneys, and thereupon consented to the payment thereof by the company to B. In the absence of any evidence that such agreement was procured by fraud or imposition: *Held*, that T. cannot, in his action against M. and K., recover from B., as garnishee, any part of the moneys so paid to him, on the ground that the assignment to him was void as against his assignor's creditors.

APPEAL from the Circuit Court for *Winnebago* County. This was a proceeding in garnishment, the principal suit being against E. McNutt and J. B., W. G. and H. C. Killips, constituting the firm of McNutt & Killips. The facts found by the circuit court were as follows: In August, 1878, J. B., H. C. & W. G. Killips were partners under the name of Killips & Sons, and, as such, owners of a mill and machinery in Winneconne. Prior to that time, said firm had given plaintiff a chattel mortgage of a portion of said machinery, to secure payment of $1,500. *Turner*, the plaintiff, was a banker or broker at Winneconne, and agent for divers insurance companies, with power to issue policies; and as such agent he procured insurance, in certain of said companies, upon said mill and machinery. On the 30th of August, 1878, the mill and machinery were burned; there being then policies upon the same in three of said companies amounting to $2,500, viz., one of $1,000 in the German American Insurance Company, one of $1,000 in another, and one of $500 in a third company. At the time of the loss, none of the Killipses had seen the policies or knew the amount of the insurance obtained upon the property by *Turner*, such insurance having been procured and paid for by him without their direction; and after the loss they "claimed" that *Turner* "would give them no information as to the policies or the amount of insurance, except that he claimed that all said insurance was payable absolutely to him." On the 2d of September, 1878, Killips & Sons retained *Burnell*, who is a lawyer residing in the city of Oshkosh, and advised with him concerning their said insurance, representing to him that they expected to have trouble and perhaps litiga-

tion with *Turner*, and also with the insurance companies, and that they had no money to pay for a retainer, or for such service as he might render. Thereupon, at the suggestion of *Burnell*, it was agreed that they should assign to him all their interest in the policies in payment for any services which he might render them in any litigation they might have concerning such loss by fire; and accordingly, on that day, they executed to him an assignment of their interest in such policies, such assignment purporting on its face to be made in consideration of $500 in hand paid to the assignors, "and of divers other good and valuable considerations;" and, in consideration of such assignment, *Burnell* executed to them an agreement to render his services in conducting such litigation, and in settling with the companies or with *Turner*. Between the 2d and the 27th days of said month of September, Killips & Sons did advise, at various times, with *Burnell*, as an attorney-at-law, concerning said matters; and at some time during the same period *Burnell* notified the insurance companies of said assignment to him. About the 27th of said September, "it was claimed that said companies were ready and willing to pay said loss without litigation;" and on that day *Turner* and his attorney, with H. C. Killips, *Burnell*, and one or two adjusting agents of the insurance companies, met in the city of Oshkosh. The adjusting agent who represented two of the companies had drafts amounting to $1,500 (the amount which said two companies were to pay), which drafts were payable to the order of Killips & Sons, *Burnell* and *Turner*. In each of said policies it was written that the loss was payable to *Turner*, as his interest might appear, and not absolutely; but otherwise the policies were payable to Killips & Sons, the owners of the property; and *Turner's* interest therein was only that created by the $1,500 chattel mortgage above mentioned. At this meeting, however, *Turner* claimed that the firm of McNutt & Killips [which seems to have been the successor to Killips & Sons, though there is no finding on that point] owed him a large

sum of money, over and above the amount secured by the chattel mortgage; and he claimed the right to apply to that indebtedness the excess of the insurance moneys above the mortgage debt.    This claim was resisted by *Burnell;* and at that time *Turner* " finally abandoned " such claim.   As no money could be obtained on said drafts unless they were indorsed by all the payees, it was agreed, by way of compromise and settlement of the matter, that in consideration of *Burnell* paying *Turner* $200 (which amount *Turner* claimed to have paid in obtaining such insurance), the latter should relinquish all claim to have any other part of the insurance money applied to the payment of the indebtedness to him not secured by said chattel mortgage; so that *Turner* was to receive $1,700 of the insurance money, and *Burnell* $800.  Thereupon *Turner* executed the following agreement:  " In consideration of $200 premium on policies allowed me, I hereby relinquish all claims against the German American Ins. Co. for insurance on the mill building," etc., describing the property; "and nothing above is to be construed as a release of my claim for loss upon property covered by my chattel mortgage which I still hold." This agreement was made with full knowledge of the facts, including the fact of the assignment made to *Burnell* by Killips & Sons; and in pursuance thereof the drafts for $1,500 above mentioned were indorsed by all the payees therein named, and *Turner* received $1,100, and *Burnell* $400, of the amount, less the interest on each of said sums for sixty days, which was deducted by the companies.   About a week or ten days thereafter, a draft for the remaining $1,000 of the insurance money became payable to the order of the same payees, and was duly indorsed by them, and, in pursuance of the aforesaid agreement, *Burnell* received of such moneys $400, and *Turner* $600, less the interest for sixty days, deducted by the companies.   The agreement made September 2, 1878, between Killips & Sons and *Burnell*, as above stated, " in the absence of any waiver on defendant's part, was void as to creditors,

except a reasonable compensation to be taken out of such insurance moneys for the services of *Burnell*." At the commencement of these garnishment proceedings, *Burnell* had in his hands no property, money, effects or credits belonging to Killips & Sons or to any member of that firm.[1]

Upon these findings the court held that the assignment to *Burnell*, by Killips & Sons, of their interest in the policies, was good as between the parties thereto, but void as to creditors, except so far as *Burnell* might retain, from the moneys received under the assignment, the reasonable value of his services as attorney; that the agreement of September 27th, however, between *Burnell* and *Turner*, was a waiver of *Turner's* right to any of the insurance moneys claimed by *Burnell*, and the payment of the $200 by *Burnell* to *Turner* estopped the latter from claiming such right. Accordingly, the court rendered judgment dismissing the proceedings in garnishment, with costs in favor of the garnishee. Plaintiff excepted to most of the findings of fact, and to the conclusion of law that, as against *Burnell*, he had waived his rights as a creditor of the Killipses, or estopped himself from asserting them; and he appealed from the judgment.

*H. B. Jackson*, for appellant:

The assignment to the garnishee defendant was fraudulent and void; the finding of the court on this point cannot be disturbed. *Cunningham v. Brown*, 44 Wis., 72, 77; *Ely v. Daily*, 40 id., 52. This being the case, the $200 paid by him to the plaintiff was the money of the Killipses; and, being used to pay a legal obligation of theirs, it furnished no consideration for a further agreement or a waiver. *Shapley v. Abbott*, 42 N. Y., 447; *Holden v. Putnam Fire Ins. Co.*, 46 id., 11; *Wilcox v. Howell*, 44 id., 398. Estoppel *in pais* is resorted to as a means to prevent injustice; the defendant seeks to use it as a shield for fraud. He has been in no way dam-

---

[1] The two last propositions are given here as "findings of fact," because they so appear in the record.— REP.

aged or misled by the act of the plaintiff. His testimony shows that he was attorney for Killips, and all the claim he had was for $300. The rest was Killips' money; and to require its payment to the latter cannot injure the defendant. Plaintiff cannot be held to have ratified the fraudulent assignment except by the clearest evidence that he so intended, and that he did so with complete information and perfect freedom of volition. In fact, the plaintiff was ignorant of the truth relating to the feigned consideration of $500 mentioned in said assignment. *Vide* Wait's Actions and Defenses, 470, 471, and cases there cited; Bigelow on Estoppel, 2d ed., 451; 47 N. Y., 410.

*Charles W. Felker*, for respondent, among other things, contended, 1. That plaintiff treated with defendant as owner of the fund, with full knowledge of the facts, and obtained a concession by way of compromise which he does not offer to restore. This constitutes an equitable estoppel. *Frost v. Saratoga Ins. Co.*, 5 Denio, 154; *Dezell v. O'Dell*, 3 Hill, 221; *Newman v. Hook*, 37 Mo., 207; *Carpenter v. Stilwell*, 12 Barb., 135; *Eldred v. Hazlett's Adm'r*, 33 Pa. St., 316; *Roe v. Jerome*, 18 Conn., 138; *Cowles v. Bacon*, 21 id., 451; *Dyer v. Cady*, 20 id., 563; *Preston v. Mann*, 25 id., 118; *White v. Fox*, 29 id., 570; *Miner v. Phœnix Ins. Co.*, 27 Wis., 693; *Webster v. Phœnix Ins. Co.*, 36 id., 67; *Northwestern Ins. Co. v. Germania Ins. Co.*, 40 id., 446; *Strong v. Ellsworth*, 26 Vt., 366; *Lucas v. Hart*, 5 Iowa, 415; *Canal Co. v. Hathaway*, 8 Wend., 483; *Horn v. Cole*, 12 Am. Law Reg., N. S., 303. 2. That plaintiff had his election to treat the assignment as void *in toto*, or to treat it as valid and negotiate for an equitable compromise, and must be confined to the course which he first adopted. He cannot now be heard to allege that the assignment is fraudulent. Bigelow on Estoppel, 578, and cases there cited; *Rodermund v. Clark*, 46 N. Y., 354; *Morris v. Rexford*, 18 id., 552; Bump on Fraud. Conv., 458, 461, and cases there cited; *Renwick v. Bank of*

*Chillicothe,* 8 Ohio, 530; *Fitch v. Baldwin,* 17 Johns., 161; *Jenness v. Berry,* 17 N. H., 549; *Lemay v. Bibeau,* 2 Minn., 291; *Scott v. Edes,* 3 id., 377; *Johns v. Bolton,* 12 Pa. St:, 339; *Okie v. Kelly,* id., 323; *Irwin v. Longworth,* 20 Ohio, 581; *Dingley v. Robinson,* 5 Me., 127.

COLE, J.   The evidence, to our minds, clearly shows that the plaintiff, in consideration of being paid $200 for premiums which he claimed to have advanced in effecting the insurance upon the mill and machinery of Killips & Sons, agreed to relinquish, and did in fact relinquish, all claim and right to the balance of the insurance money in the hands of the garnishee.   The court below so found as a matter of fact, and we think no other conclusion could fairly be deduced from the testimony.   The language of the instrument bearing date September 27, 1878, is very plain and explicit, showing that such was the understanding of the parties at the time of its execution.   Indeed, it would be difficult more clearly to express that intention than it is expressed in this writing, when considered in connection with the other testimony.   The agreement was in the nature of an adjustment or compromise of a doubtful claim preferred by the plaintiff; and for a valuable consideration he agreed to relinquish all claim upon the insurance money except that for the loss of the property covered by his chattel mortgage.   Having made that agreement, having relinquished a doubtful claim to the whole fund in the hands of the garnishee, for a certain sum paid him, it is difficult to perceive any valid reason why he should not stand by his agreement.   It is said by his counsel that he did not know, at the time, what was the real consideration for the assignment made by the Killipses of their interest in the insurance money to the garnishee.   But he certainly had ample notice that whatever interest these parties had in that fund had been assigned to *Mr. Burnell;* and the evidence satisfactorily proves that the plaintiff treated with *Mr. Bur-*

*nell* in the matter as the real or pretended owner of that fund.

. There is not the slightest pretense for claiming, as we think, that there was any fraud or imposition in the transaction. Suppose the assignment was made by the Killipses with a fraudulent intent to place the fund beyond the reach of their creditors — an inference which the evidence scarcely warrants: yet the plaintiff saw fit to abandon and relinquish all claim upon it, to let the assignment stand, in consideration of $200. And as there is no sufficient evidence that the agreement was procured by fraud, or that any improper means were used to secure its execution by the plaintiff, it seems to us it should be enforced according to the intention of the parties at the time it was made. It was argued by the learned counsel for the plaintiff, that the agreement in fact had no reference whatever to the money in the hands of the garnishee; that it related solely to another matter, namely, the abandonment by the plaintiff of an unfounded claim he had made to the whole insurance, based upon an erroneous construction of the policies. But we are unable to adopt that view as to the intent of the parties, or the effect of the agreement, more especially when the instrument is read in the light which the other testimony throws upon it. The plaintiff himself admits that before he executed the agreement he was informed at the Beckwith House, by the adjuster, that *Burnell* claimed the interest of the Killipses in the insurance money, under an assignment from them, and that *Burnell* was present asserting his claim.

It was doubtless in view of that claim, and in consideration of the $200 paid, that the plaintiff thought best to execute the agreement, for the very natural reason that it was for his interest to take that sum rather than run the risk of losing all. At all events, the fact is indisputable, that by the arrangement made the plaintiff obtained $200, which he retains; and, having secured this advantage, it would not seem to be in

accord with the principles of fair dealing to suffer him to repudiate the arrangement and attack the *bona fides* of the assignment to the garnishee. We do not deem it necessary to consider the question, so fully discussed by counsel on both sides, whether the plaintiff could subject this insurance money, which belonged to the Killipses, to the payment of his debt against the firm of McNutt & Killips. It is sufficient for this case to say, as we feel authorized to do upon the evidence, that the plaintiff knew that his insurance money had been assigned by the Killipses to the garnishee, who claimed to own it, and he saw fit to make the arrangement about it he did; and, having agreed to relinquish what might perhaps prove an uncertain and contested claim for a certain sum paid, he should abide in good faith by his agreement.

These views are decisive of the case.

*By the Court.* — The judgment of the circuit court is affirmed.